NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

|  |  |
|---|---|
| ROBERT WASHINGTON, : | |
| : | Civil Action No. 17-3439(RMB) |
| Petitioner : | |
| : | |
| v. : | **OPINION** |
| : | |
| WILLIE BONDS, *et al.*, : | |
| : | |
| Respondents : | |

---

**BUMB**, District Judge

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Pet., ECF No. 1) filed by Petitioner Robert Washington ("Petitioner"), an inmate confined in South Woods State Prison in Bridgeton, New Jersey. Petitioner alleged four grounds for relief in his habeas petition. (Id.) However, Petitioner also simultaneously filed a "Pro Se Brief in Support of Federal Habeas Corpus Petition" ("Petr's Mem."), in which he asserted ten grounds for relief, overlapping with the four grounds in his petition. (ECF No. 1-7.) Respondents filed an answer opposing habeas relief and submitted the state court record.[1] (Answer, ECF No. 5.) Respondents addressed only the four

---

[1] Petitioner supplemented the state court record, Exhibit 19, by submitting three missing pages from his 2014 pro se supplemental brief in support of his appeal of his first PCR petition. (Pro Se Supplemental Brief on PCR Appeal, ECF No. 7.)

grounds for relief stated in Petitioner's habeas petition. (Answer, ECF No. 5.) The Court will address all ten claims raised.

On July 6, 2017, Petitioner filed a document with the Court, which states, in pertinent part:

> 1. I am filing this certification in lieu of my Federal Habeas Corpus Petition [] pursuant to Court R. 402 for general admiss[ibility] of Relevant Evidence in rebuttal to the Respondent's Answer. I am only rebutting a small portion of the respondent's answer being that I am satisfied with my brief, and application previously filed.
>
> A) Attached are documents of Prima Facie evidence to support my petition, in which are first a copy of certain relevant pages of the accusers [sic] medical record contradicting claims by the respondent in regards to the seriousness of the injuries in which were not life threatening as said on page 21, in addition revealing that the accuser was discharged merely two days after the alleged incident not three as also said on pg. 21, plus evidence that there was no proof of penetration to support a agg.Sexual Assault as also falsely said by the respondent.
>
> B) Also attached as highlighted are the dates I was sent to prison which was 11-05-2009, and my I.S.P. was revoked 10-28-2009 in which contradicts the claims that I went to prison on 8-10-2009 the day after my arrest. Plus a page out of the presentence report showing the same proof.
>
> C) I also added a copy of the P.C.R. transcripts the respondent said they don't have, and in regards to the June 30, 2010 P.T.C. transcript which would've proved several injustices that was also said by the respondent to not have is a burden that is on them. It is believed that statute 28 USCA 2254(e), (1) has been satisfied deeming that

> on petitioner's side there has been clear and
> convincing evidence to rebut the presumption,
> and also that the respondent has lied in so
> many ways to have shown no honor in the fair
> laws of the land and the U.S. Constitution.

(Cert. Pursuant to R. 402, ECF No. 6 at 1-2.)

On December 28, 2017, Petitioner filed a self-styled "Certification Pursuant to R. 501 Privilege in General If Appropriate." (ECF No. 8.) The Court construes this document as Petitioner's reply to Respondents' Answer. (Petr's Reply, ECF No. 8.)

By Opinion and Order dated April 26, 2019, this Court found that Petitioner presented a mixed habeas petition that was not reviewable by this Court pursuant to Rose v. Lundy, 455 U.S. 509 (1982). (Opinion and Order, ECF Nos. 12, 13.) On the face of the petition, Ground Four of Petitioner's third PCR petition was not fully exhausted because Petitioner did not appeal to the New Jersey Supreme Court. Petitioner chose to withdraw this unexhausted claim [Point Nine in Petitioner's memorandum, ECF No. 1-7]) and proceed only with the remaining claims in his habeas petition. (Letter, ECF No. 15.) For the reasons discussed below, the Court denies the habeas petition.

I.   PROCEDURAL HISTORY

On December 10, 2009, Petitioner was indicted by an Atlantic County grand jury for second degree luring or enticing a child (Count 1); third degree criminal restraint (Count 2); first degree

3

aggravated sexual assault (Counts 3, 4, and 5); third degree possession of a weapon for unlawful purposes (Count 6); fourth degree unlawful possession of a weapon (Count 7); aggravated assault (Count 8); and possession of a weapon by a convicted person (Count 9). (Answer, Ex. 7, ECF No. 5-9.) On April 15, 2010, the grand jury returned a superseding indictment, adding a charge of attempted murder to the charges in the original indictment. (Count 9). (Answer, Ex. 8, ECF No. 5-10.)

On October 22, 2010, Petitioner pleaded guilty to amended Count 3, criminal sexual contact, and Count 9, attempted murder. (Answer, Ex. 3, ECF No. 5-5; Ex. 9, ECF No. 5-11.) On January 7, 2011, the court sentenced Petitioner to a sixteen-year term of imprisonment with an 85% parole disqualifier and five years of parole supervision on Count Nine, and to a concurrent term of eighteen months in prison on Count Three. The sentences were concurrent with another sentence that Petitioner was serving. The remaining counts were dismissed. (Answer, Ex. 10, ECF No. 5-12 at 1.)

On March 8, 2012, the Superior Court of New Jersey, Appellate Division affirmed Petitioner's sentence, rejecting the claim that the sentence was excessive. (Answer, Ex. 12, ECF No. 5-14.) On April 4, 2012, Petitioner filed a motion for post-conviction relief ("PCR"). (Answer, Ex. 13, ECF No. 5-15.) Following a hearing on February 8, 2013, the court denied Petitioner's PCR petition.

(Answer, Ex. 6, ECF No. 5-8; Ex. 15, ECF No. 5-17.) Petitioner appealed and the Appellate Division affirmed the PCR court on April 1, 2015. (Answer, Ex. 16, ECF No. 5-18; Ex. 20, ECF No. 5-22.)

On April 14, 2015, Petitioner filed a petition for certification with the Supreme Court of New Jersey, seeking review of the Appellate Division's ruling. (Answer, Ex. 21, ECF No. 5-23.) In an order entered on July 10, 2015, the Supreme Court denied the petition. (Answer, Ex. 22, ECF No. 5-24.)

On August 15, 2015, Petitioner filed a second PCR petition. (Pet., ¶11(b)(3), ECF No. 1.) On October 21, 2015, the court issued a letter decision and entered an order denying the application. (Answer, Ex. 23, ECF No. 5-25; Ex. 24, ECF No. 5-26.) Petitioner appealed the denial of his second PCR petition, but the PCR court was affirmed by the Appellate Division on September 15, 2016, and certification was denied by the New Jersey Supreme Court on April 6, 2017. (Answer, Ex. 27, ECF No. 5-29; Ex. 28, ECF No. 5-30.)

In the meantime, on February 5, 2016, Petitioner filed a third petition for post-conviction relief. (Answer, Ex. 25, ECF No. 5-27 at 2.) On April 1, 2016, the PCR court issued a letter decision and entered an order denying the application. (Answer, Ex. 25, ECF No. 5-27; Ex. 26, ECF No. 5-28.) Petitioner filed his federal habeas petition on May 15, 2017.

## II. BACKGROUND

Pursuant to a negotiated plea agreement, Petitioner pleaded guilty to attempted murder and criminal sexual contact, and the remaining counts were dismissed. (Answer, Ex. 3, ECF No. 5-5.) During the plea colloquy, Petitioner admitted to the following. On August 8, 2009, in Atlantic City, New Jersey, Petitioner attempted to kill R.C., a stranger to whom he offered a ride, by stabbing her with a knife in the neck, head and face. (Id. at 10-11.) Petitioner further admitted that he committed an act of criminal sexual contact with R.C., by placing his mouth over her bra without her permission to sexually gratify himself. (Id. at 11-12.)

In exchange for the guilty plea, the State agreed not to seek an extended term of imprisonment and recommended an aggregate sentence of sixteen years in prison subject to a statutorily-mandated 85% parole bar, with the sentence to run concurrently with the sentence that Petitioner was already serving. (Id. at 2-3; Ex. 9, ECF No. 5-11 at 3.) Finding Aggravating Factors Two (gravity and seriousness of the harm inflicted), Six (extent of petitioner's criminal record), and Nine (need for deterrence), and finding no mitigating factors, the court sentenced Petitioner in accordance with the plea agreement. (Answer, Ex. 4, ECF No. 5-6 at 14-15.) Petitioner received one day of jail credit. (Answer, Ex. 10, ECF No. 5-12.)

Petitioner filed a petition for post-conviction relief. ("PCR.") (Answer, Ex. 13, ECF No. 5-15; Petr's Pro Se Supp. Brief to PCR Court, ECF No. 6 at 36-46.) The PCR court denied relief after a hearing held on February 8, 2013. (Answer, Ex. 6, ECF No. 5-8.)

The Appellate Division made the following findings of fact on Petitioner's PCR appeal:

> The following facts surrounding defendant's underlying convictions are pertinent to the claims raised in his PCR petition. Defendant pled guilty to attempted murder and criminal sexual contact related to the August 2009 stabbing and sexual assault of a minor female. The victim identified defendant as her assailant, reporting she accepted a ride from defendant, who then "attempted to pull down [her] halter top and grab her breast." When she tried to flee, defendant "pushed her head, striking … [it] on the dashboard" and stabbed her "numerous times" in the face and neck. She escaped by jumping out of a moving vehicle.
>
> When these crimes occurred, defendant was on conditional release under New Jersey's Intensive Supervision Program (ISP), for unrelated offenses. The alleged violation of ISP resulted in his immediate incarceration. Defendant was charged in a ten-count indictment.
>
> Defendant entered his guilty pleas pursuant to a negotiated plea agreement, which included the State's agreement to recommend an aggregate sentence of sixteen years, subject to the 85% period of parole ineligibility imposed by the No Early Release Act (NERA), NJSA 2C:43-7.2, to run concurrently to his existing sentence, and not seek an extended term sentence, N.J.S.A. 2C:44-3, despite defendant's three prior qualifying

convictions. The State also agreed to dismiss all other charges. In addition to the sentence set forth in the plea agreement, defendant was ordered to pay the victim's $150 medical costs.

We considered defendant's appeal challenging the imposed sentence on this court's Excessive Sentence Oral Argument calendar. R. 2:9-11. Defendant argued the sentence was manifestly excessive and he was wrongfully required to pay restitution, as represented by the $150 medical costs. The sentence was affirmed and certification was not sought. State v. Washington, No. A.-1449-10 (App. Div. Mar. 8, 2012).

Defendant filed a pro se PCR petition, asserting trial counsel was ineffective during sentencing. At the PCR hearing, defense counsel argued the application of aggravating factor two was erroneous, the sentencing judge "double count[ed]" factors, and trial counsel failed to argue defendant "led a law abiding life for a substantial period of time, as he had no prior convictions for violent crimes," N.J.S.A. 2C:44-1(b)(7). Defendant also sought retroactive application of gap-time credits. He requested an evidentiary hearing, alleging facts supporting his claim existed outside the record.

The PCR court denied defendant's petition, finding he failed to prove counsel's performance was deficient or the outcome of the proceeding would have been different but for counsel's alleged errors. Even assuming counsel raised every issue presented in defendant's petition, the judge concluded defendant's sentence was extremely lenient and defense counsel "did a … good job negotiating this [plea] down to [sixteen] years…." Defendant's claim for gap-time credits was also rejected. The court found defendant's ISP violation negated his eligibility for credits. This appeal ensued.

(Answer, Ex. 20, ECF No. 22.) On April 1, 2015, the Appellate Division affirmed the PCR court and denied Petitioner's newly raised claim. (Id.)

Petitioner brought second and third petitions for post-conviction relief, but the PCR court dismissed both petitions as procedurally barred. (Pet., ECF No. 1, ¶11.) Petitioner appealed the denial of his second PCR petition to the Appellate Division, which affirmed the PCR court, and then he appealed to the New Jersey Supreme Court, which denied certification. (Id.) Petitioner did not exhaust his appeals of Ground Four of his third PCR petition [Ground Nine in Petr's Mem., ECF No. 1-7].

Petitioner filed a brief in support of his habeas petition, raising ten grounds for relief ("Habeas Claims One through Ten"):

> POINT ONE: The Petitioner's 5th, 6th, and 14th Amendment Federal, and State Constitutional Rights were violated when trial counsel failed to provide his Grand Jury Transcripts

> POINT TWO: Petitioner was deprived of his 6th and 14th Amendment Rights when his counsel failed to argue that the prosecutor performed malicious prosecution by withholding exculpatory evidence and lying about evidence to the grand jury

> POINT THREE: Petitioner was deprived of his 6th and 14th Amendment Federal Constitutional Rights when the court failed to properly balance mitigating and aggravating factors in determining a proper sentence at the Defendant's sentencing

> POINT FOUR: Petitioner was deprived of his constitutional rights to the effective

assistance of trial counsel, due process of law and of his right to a fair trial since trial counsel failed to object to the court not awarding Gap and Jail time credits

POINT FIVE: Petitioner was deprived of his constitutional rights to the effective assistance of trial counsel, due process of the law and of his right to a fair trial since an inadequate factual basis existed for attempted murder and criminal sexual contact

POINT SIX: Petitioner was deprived of his 6th and 14th Amendment Rights when his trial counsel and appellate counsel failed to argue against the trial judge['s] judicial mis-conduct [sic] that stemmed from his unethical comments from the bench

POINT SEVEN: Petitioner was deprived of his constitutional rights to effective assistance of trial counsel, due process of the law and of his right to a fair trial since trial counsel failed to object to the state failing to return the Petitioner's car and other belongings which was [sic] seized by the State

POINT EIGHT: Petitioner was deprived of his rights to the effective assistance of trial counsel, due process of the law and of his right to a fair trial since no basis existed to assess a certain sexual offender['] surcharge

POINT NINE: The Petitioner's State and Federal Constitutional rights were violated when his trial counsel was ineffective by misleading the petitioner about the plea bargain number offered by the State at a status conference [unexhausted and withdrawn by Petitioner]

POINT TEN: Petitioner's 5th, 6th and 14th Amendment Rights were violated when the higher courts erred in agreeing with the PCR court['] denial of the petitioner's second P.C.R.

(Petr's Mem., ECF No. 1-7.)

III. DISCUSSION

    A.   <u>Exhaustion of Claims</u>

Before a district court can consider an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court, the petitioner generally must exhaust his state court remedies. 28 U.S.C. § 2254(b) provides:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

The Supreme Court explained the exhaustion requirement in O'Sullivan v. Boerckel:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional

11

> issues by invoking one complete round of the
> State's established appellate review process.

526 U.S. 838, 845 (1999).

"'Fair presentation' of a claim means that the petitioner "must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." <u>Holloway v. Horn</u>, 355 F.3d 707, 714 (3d Cir. 2004) (quoting <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir.1999) (citations omitted)).

B.   <u>Exhausted Claims Three and Four</u>

Petitioner exhausted Habeas Claims Three[2] and Four by raising the same factual and legal basis for each claim in his first PCR petition, in the Appellate Division, and by filing a petition for certification in the New Jersey Supreme Court.

C.   <u>Petitioner's Unexhausted Claims: Habeas Claims One, Two, Five, Six, Seven, Eight and Ten</u>

Petitioner failed to exhaust Habeas Claim One. Although he raised related claims regarding prosecutorial misconduct before the grand jury, he did not exhaust his claim that his trial counsel was ineffective by failing to obtain the grand jury transcripts

---

[2]   Petitioner challenged the sentencing court's weighing of aggravating and mitigating factors under state law on his direct appeal (Answer, Ex. 5, ECF No. 5-7) and he raised the issue of ineffective assistance of counsel for failing to argue against aggravating factors and for mitigating factors in his first PCR proceeding. (Cert. Pursuant to R. 402, ECF No. 6 at 16; Answer, Ex. 17, ECF No. 5-19 at 9; Ex. 21, ECF No. 5-23.)

before Petitioner pled guilty. If appropriate, the Court may deny unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2). The Court will discuss the merits of the unexhausted claims below.

Habeas Claim Two alleges ineffective assistance of counsel for failing to object to the prosecutor's misconduct before the grand jury. Petitioner raised another legal theory, prosecutorial misconduct for failure to disclose exculpatory evidence to the grand jury, in his first PCR appeal without having first raised it before the PCR court. (Answer, Ex. 19, ECF No. 6 at 17.) When Petitioner raised his claim of prosecutorial misconduct again in his second PCR petition, the court denied it on procedural grounds. (Answer, Ex. 23, ECF No. 5-25.) In any event, Petitioner did not exhaust his claim that his counsel was ineffective by failing to object to the prosecutor's failure to disclose exculpatory evidence to the grand jury. The Court will address the merits below.

Habeas Claims Five and Seven are unexhausted because although Petitioner raised the issues in his first PCR petition, he did not appeal those issues. (Cert. Pursuant to R. 402, ECF No. 6; Exhibits 17, 19, ECF Nos. 5-19, 5-21.) The Court will address the merits of Habeas Claim Five below.

Habeas Claim Seven is not cognizable on habeas review. "A district court shall entertain an application for a writ of habeas

corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Habeas Claim Seven is a challenge to the State's failure to return seized property rather than a challenge to the judgment the led to Petitioner's custody. See Large v. Coleman, Civ. Action No. 08-1561, 2009 WL 222964 (W.D. Pa. Jan. 29, 2009) (denial of motion for return of seized property is not a matter a federal habeas court is authorized to review.)

Returning to Habeas Claim Six, Petitioner asserts that his trial and appellate counsel were ineffective by failing to object to biased comments by the court during pretrial, at sentencing and in the PCR hearing. In his pro se PCR appeal, Petitioner asserted that "[t]he sentencing court improperly displayed bias which improperly effected [sic] its' [sic] judgment and sentencing of the Defendant. (Pro Se Supplemental Brief on PCR Appeal, ECF No. 7 at 6; Answer, Ex. 19, ECF No. 5-21 at 13-15.) He further alleged that "the Post Conviction Relief Court Improperly displayed bias which improperly affected its judgment of granting the defendant relief." (Answer, Ex. 19, ECF No. 5-21 at 15-17.)

Habeas Claim Six is unexhausted because Petitioner did not raise the same legal basis in state court as in his habeas claim, ineffective assistance of counsel for failure to object to the court's allegedly biased comments. See Lambert v. Blackwell, 134

14

F.3d 506, 517 (3d Cir. 1997) (claim is unexhausted if habeas petitioner alleged ineffective assistance of counsel in state court but alleged a different basis for the claim in his federal habeas petition).

Habeas Claim Eight is also unexhausted. Petitioner raised this claim in his first PCR petition (Cert. Pursuant to R. 402, ECF No. 6 at 25) but he did not raise it on PCR appeal. (Answer, Exhibits 17, 19, ECF Nos. 5-19, 5-21.)

In Habeas Claim Ten, Petitioner alleges that the state courts erred in denying his second PCR petition on procedural grounds. The Court will address this claim below.

D.   Whether Petitioner is Entitled to an Evidentiary Hearing

If a claim was adjudicated on the merits by a state court, the habeas petitioner is limited to the record before that state court in seeking federal habeas relief under 28 U.S.C. § 2254(d)(1). Rapelje v. McClellan, 134 S. Ct. 399, 400 (2013) (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1400 (2011)). "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." Pinholster, 131 S. Ct. at 1401.

28 U.S.C. § 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

By arguing that the records he proffers show by clear and convincing evidence that his sexual assault of the victim did not involve penetration, that the victim's injuries were minor; therefore, he could not have attempted to kill her, and that the state courts incorrectly calculated credits against his sentence, Petitioner relies on § 2254(e)(2)(B) in seeking an evidentiary hearing to further develop his claims. (Petr's Mem., ECF No. 1-7; Cert. Pursuant to R. 402, ECF No. 6.)

1.  Whether evidence refutes the Indictment for Aggravated Sexual Assault

Petitioner argues that the victim's medical records show by clear and convincing evidence that his sexual assault of the victim did not involve penetration, and he seeks an evidentiary hearing to allow factual development of this claim. Petitioner, however,

pled guilty to a lesser offense that did not involve penetration, criminal sexual contact. Therefore, evidence that the assault did not involve penetration does not call into question Petitioner's conviction.

In his reply, Petitioner contends that the medical evidence is pertinent to his guilty plea because he would not have pled guilty to a lesser charge if he had known the medical records belied the victim's report. (Petr's Reply, ECF No. 8 at 2-3.) But the medical record proffered here (Cert. Pursuant to R. 402, ECF No. 6 at 6) does not establish by clear and convincing evidence that the sexual assault did not involve penetration, only that no injuries were seen upon examination.

The victim reported to the police that she was sexually assaulted, including vaginal penetration, and that she saw a condom wrapper in Petitioner's car and believed that he used a condom. (Answer, Ex. 2, ECF No. 5-4 at 13-15, 20-21.) Although the medical records do not establish vaginal penetration nor do they refute that penetration occurred. Petitioner is not entitled to an evidentiary hearing on this claim.

    2.    Whether evidence refutes the attempted murder charge

Petitioner also claims that the victim's medical records establish by clear and convincing evidence that he did not attempt to kill the victim. (ECF No. 6 at 1, ) Petitioner is wrong. In New

Jersey, there are three separate categories of attempt, "one of which looks only to defendant's own purpose," subsection 2 of N.J.S.A. 2C:5-1(a). State v. Smith, 621 A.2d 493, 504 (N.J. Super. Ct. App. Div. 1993) cert. denied, 134 N.J. 476. This provision states "a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, … [he/she] does or omits to do anything with the purpose of causing such result without further conduct on his[/her] part." N.J.S.A. § 2C:5-1(a)(2).

"[T]o be guilty of attempted murder [under this provision], a defendant must have purposely intended to cause the particular result that is the necessary element of the underlying offense—death." Smith, 621 A.2d at 504 (quoting State v. Rhett, 601 A.2d 689 (N.J. 1992)). If the defendant has done what he believes necessary to result in murder, it is not necessary that his conduct would more likely than not result in the victim's death. Id. In Smith, the defendant was guilty of attempted murder because he bit the victim with the intent of causing the victim's death by spreading the HIV virus. Id. at 505. The low probability that the Petitioner's actions would cause the victim's death was irrelevant. Id.

Here, evidence was presented to the grand jury that Petitioner repeatedly stabbed the victim in the head, face, neck and back with while saying words to the effect of "die bitch." (Answer, Ex.

2, ECF No. 5-4 at 12-13.) Even assuming the victim's wounds were not serious enough to cause death, Petitioner admitted he stabbed the victim for the purpose of causing her death. The grand jury testimony that Petitioner used the words "die bitch" while he stabbed the victim in the face, head and neck supports the inference that Petitioner's purpose was to kill her. Petitioner has not established by clear and convincing evidence that the state courts erred in finding that he attempted to murder the victim. Petitioner is not entitled to an evidentiary hearing to further develop this claim.

### 3.   Whether evidence refutes that Petitioner remained incarcerated after his August 9, 2009 arrest

Petitioner also seeks a hearing to establish that he should have been awarded jail credit and/or gap credit beginning August 10, 2009 through the date he was sentenced for violating I.S.P. requirements, January 7, 2011. (Petr's Mem., ECF No. 1-7 at 20.) Petitioner seeks to establish, by offering various documents showing dates of his incarceration, that he was not in prison the day after his arrest, August 10, 2009. (Cert. Pursuant to R. 402, ECF No. 6 at 1-2.) Petitioner contends that he was not in prison until November 5, 2009, and his I.S.P was revoked on October 28, 2009. (Id.)

One of the documents submitted by Petitioner, a page from Petitioner's Presentence Report ("PSR"), states "On November 18,

2008 he was enrolled in ISP, but that was later revoked on October 28, 2009, *after he was arrested for the present offense.*" (Cert. Pursuant to R. 042, ECF No. 6 at 4) (emphasis added). This statement is consistent with his incarceration after his August 9, 2009 arrest.

The South Woods State Prison Face Sheet Report submitted by Petitioner shows the date he was sentenced, not the date he was arrested for the present offenses. (Id. at 5.) Finally, Petitioner's PSR is in the state court record, and it shows, in a document approved on December 23, 2010, "Defendant currently in State Prison on an ISP violation on Indictment 6-11-02621-D **as of 8/10/2009** (original sentence of 05/04/2007 re-imposed)." (Answer, Ex. 29, ECF No. 5-31 at 1) (emphasis added). Thus, Petitioner has not shown by clear and convincing evidence that the state courts erred in a factual finding, and Petitioner is not entitled to an evidentiary hearing to further develop this claim.

E.   Habeas Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)). In applying the deference required under § 2254(d), habeas courts must look to the last state court adjudication on the merits of the petitioner's claim. See e.g. Greene v. Fisher, 565 U.S. 34, 40 (2011).

1.    Habeas Claim One

There are two elements to a Sixth Amendment ineffective assistance of counsel claim, deficient performance by counsel and

prejudice. <u>Premo v. Moore</u>, 562 U.S. 115, 121 (2011) (citing <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)). "[I]f the defendant makes an insufficient showing on one [prong of the <u>Strickland</u> test]" a court need not address the other prong. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Premo</u>, 562 U.S. at 121.

For the deficient performance prong, "a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> (internal quotations omitted) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011)). A petitioner must overcome a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Id.</u> (quoting <u>Richter</u>, 562 U.S. at 104) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984)). The burden a petitioner must meet is "'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" <u>Id.</u> at 122 (quoting <u>Richter</u>, 562 U.S. at 104) (quoting <u>Strickland</u>, 466 U.S. at 687)). Habeas review of counsel's performance is doubly deferential, and the question is not whether counsel's actions were reasonable but whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard. <u>Id.</u> (citations omitted).

Strict adherence to the Strickland standard is essential "when reviewing the choices an attorney made at the plea bargain stage." Premo, 562 U.S. at 125. To prove Strickland prejudice in the context of acceptance of a plea offer, a petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 129 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

> [W]here a plea has been entered without a full trial or … even before the prosecution decided on the charges … added uncertainty … results when there is no extended, formal record and no actual history to show how the charges have played out at trial[, which] works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance.

Id. at 132. Hindsight and second guesses in such a case are especially inappropriate. Id.

Petitioner claims his trial counsel was ineffective by failing to obtain the Grand Jury Transcripts and a Bill of Particulars that Petitioner requested on June 30, 2010. (Petr's Mem., ECF No. 1-7 at 9.) Petitioner contends that if the grand jury transcripts had been provided, he would have discovered the prosecutor's failure to support the charge of Aggravated Sexual Assault Charge with evidence of penetration during the sexual assault. (Petr's Mem., ECF No. 1-7 at 11-12.) In his reply brief,

Petitioner asserts that he would not have pled guilty to the lesser offense of Criminal Sexual Contact if he had learned there was no evidence to support the victim's accusation of sexual assault involving penetration. (Petr's Reply, ECF No. 8 at 2.)

The grand jury transcripts do not reveal that the prosecutor either lied or failed to provide exculpatory evidence to the grand jury.[3] The second grand jury presentation is pertinent here because Petitioner pled guilty to two counts in the superseding indictment. Detective Brown testified that he investigated an allegation of assault and sexual assault that led to the charges against Petitioner. (Answer, Ex. 2, ECF No. 5-4 at 4.) A seventeen-year-old female reported having been a victim of rape. (Id. at 5.) She accepted a ride from a stranger who drove her to a park rather than her destination. (Id. at 6-7.) Detective Brown said the victim reported that Petitioner "forced her forward and he sexually assaulted her from behind after removing her tampon" and that she reported a vaginal penetration. (Id. at 13, 20.)

Detective Brown agreed that the lab report indicated that no seminal material was detected, so there was no DNA examination done. (Answer, Ex. 2, ECF No. 5-4 at 21.) However, Detective Brown testified that the victim told him and the "SANE nurse" that she

---

[3] The Court notes there is no federal constitutional duty of a prosecutor to disclose exculpatory evidence to grand jury. U.S. v. Williams, 504 U.S. 36, 52-55 (1992).

believed Petitioner may have used a condom because she saw a discarded condom wrapper. (Id.) Further, because the victim had her period at the time, she could not tell whether Petitioner had ejaculated. (Id.) Petitioner's DNA was discovered on the victim's bra, and the victim's blood was found in Petitioner's car. (Id. at 21-22.)

The grand jury transcripts do not establish that there was no penetration during the sexual assault of the victim, despite the lack of DNA evidence of semen. The prosecutor explained the lack of DNA evidence by the victim's report that she believed the perpetrator used a condom. Because the grand jury transcripts did not exonerate Petitioner of Aggravated Sexual Assault and indeed supported Petitioner's guilty plea to Criminal Sexual Contact, his counsel was not ineffective by failing to obtain the grand jury transcripts before Petitioner pled guilty. Habeas Claim One is denied.

2.  <u>Habeas Claim Two</u>

In Habeas Claim Two, Petitioner alleges ineffective assistance of counsel for failing to argue that the prosecutor withheld exculpatory evidence and lied about evidence to the grand jury. (Petr's Mem., ECF No. 1-7 at 11.) Again, Petitioner relies on the victim's medical records to show the prosecutor had no evidence to support the Aggravated Sexual Assault charge in the original indictment. (Petr's Mem., ECF No. 1-7 at 11.) As discussed

25

above, Petitioner is not entitled to an evidentiary hearing on the victim's medical records and the prosecutor neither withheld exculpatory evidence nor lied to the grand jury when he elicited testimony that the victim reported a rape with vaginal penetration to the police. Petitioner's counsel was not ineffective by failing to raise a meritless claim. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Habeas Claim Two is denied.

### 3.   Habeas Claim Three

Petitioner alleged, in Habeas Claim Three, that he was deprived of his Sixth and Fourteenth Amendment Rights when the trial court failed to properly balance mitigating and aggravating factors in determining a proper sentence. Respondents assert that Petitioner did not allege a Fourteenth Amendment violation on direct appeal. (Answer, ECF No. 5, ¶9.) The Excessive Sentencing Oral Argument Transcript is consistent with Respondent's assertion; Petitioner challenged the trial court's findings of aggravating and mitigating factors as a matter of state law not a federal constitutional violation. (Answer, Ex. 5, ECF No. 5-7.) Although Petitioner uses the words "14th Amendment" in the heading of Habeas Claim Three, he cited only state law in support of his claim that the trial court erred. (Petr's Mem., ECF No. 1-7 at 14-17.)

Nevertheless, the Court will address Petitioner's related claim, which he exhausted in his first PCR proceeding, that his

counsel was ineffective for failing to argue that there was no basis for Aggravating Factor Two because all of the victim's "injuries were deemed minor according to Medical Records[;]" the victim was 17-years old, which does not constitute "extreme youth" under the statute, and the victim resisted by jumping out of a moving vehicle, which is counter[-]indicative of Aggravating Factor Two. (Id.)

Petitioner further argues that counsel was ineffective for not arguing that a lesser sentence should be imposed because mitigating factors were present. (Id. at 15.) Petitioner contends Mitigating Factor One should have applied because the conduct did not cause serious harm, according to the medical records. (Id. at 16.) Petitioner also contends Mitigating Factor Seven should have applied because he has no violent history, and Mitigating Factor Six should have applied because he was ordered to pay $150 in restitution. (Id.) Petitioner contends he would have received a lesser sentence but for his counsel's errors at sentencing. (Id. at 17.)

A habeas court must give deferential review of the highest state court's decision on the merits of a claim. The Appellate Division, on Petitioner's appeal of the first PCR proceeding, rejected Petitioner's claim. The court held:

> Here, we reject these claims and conclude, as did the PCR judge, defendant failed to prove either prong required by Strickland and Fritz.

> Notably, defendant faced a minimum extended
> term of thirty years on the attempted murder
> and sexual assault charges alone. See N.J.S.A.
> 2C:43-6(a)(1)[,] 7(a)(1). As part of his plea,
> the State agreed not to seek an extended term.
> Nothing in the record suggests the trial judge
> would have approved a lesser sentence than the
> recommended sixteen years.
>
> Importantly, we find no evidential
> support for application of the alleged
> mitigating factors. Defendant repeatedly
> stabbed and sexually assaulted the minor
> victim. The mere suggestion his conduct did
> not cause serious harm is preposterous.
> Further, he has a prior criminal record
> obviating application of factor seven. … In
> addition, the alleged misapplication of
> aggravating factor two was considered and
> rejected on appeal.

(Answer, Ex. 20, ECF No. 5-22 at 9-10.)

The Appellate Division applied the Strickland standard of review to Petitioner's ineffective assistance of counsel claim regarding aggravating and mitigating factors at sentencing. (Id. at 6-7.) Therefore, the Appellate Division's decision was not contrary to clearly established federal law.

Further, the Appellate Division's application of the Strickland standard was not unreasonable. The record indeed supports the Appellate Division's finding that Petitioner's sexual assault and stabbing of the victim caused her serious harm, which defeats Petitioner's claim that his counsel was ineffective for failing to argue in favor of Mitigating Factor One, that "the defendant's conduct neither caused nor threatened serious harm." The prosecutor argued that the victim had visible scarring on her

face from the cuts Petitioner inflicted and that she recently had cosmetic surgery on her shoulder to repair a slash injury that had scarred very badly. (Answer, Ex. 4, ECF No. 5-6 at 6-7.) The victim was still in counseling for emotional injury. (Id. at 7.) The sentencing court noted the victim would have physical and mental scars for her entire life. (Id. at 14.) Additionally, Petitioner threatened serious harm when he grabbed her by the neck and told her it would be better if she did what he said and she wouldn't get hurt, and then struck her head against the dashboard. (Id. at 13.)

The record also supports the Appellate Division's finding that Mitigating Factor Seven was not applicable because Petitioner had a prior criminal record. Mitigating Factor Seven provides that "the defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense." N.J.S.A. 2C:44-1(b)(7) (effective June 29, 2010 to August 9, 2015). The PSR submitted to the sentencing court showed twelve arrests with seven known convictions from 1999 to 2009. (Answer, Ex. 29, ECF No. 5-31 at 12.) Petitioner's most recent conviction was in 2007, for possession and distribution of CDS in a school zone. (Id. at 12-13.) Petitioner's crimes against the victim here occurred in August 2009. Petitioner had not led a law-abiding life for a substantial

period of time before commission of the present offenses and was not entitled to application of Mitigating Factor Seven.

Mitigating Factor Six states "the defendant has compensated or will compensate the victim of his conduct for the damage or injury that he sustained, or will participate in a program of community service." N.J.S.A. 2C:44-1(b)(6) (effective June 29, 2010 to August 9, 2015). The sentencing court ordered restitution in the amount of $150. (Answer, Ex. 4, ECF No. 5-6 at 15.) The Appellate Division held that "ordered payment of the victim's modest medical cost unaccompanied by factual support showing defendant's inability to pay, defeats this claim." (Answer, Ex. 20, ECF No. 22 at 10.) The Appellate Division's decision that Mitigating Factor Six did not apply is not unreasonable because Petitioner was ordered to pay only $150 in medical costs and the victim sustained injuries from the stabbing that caused her visible scarring, which resulted in at least one cosmetic surgery, suggesting that Petitioner did not fully compensate the victim for the damage she sustained.

Finally, Petitioner argues his counsel erred by failing to object to application of Aggravating Factor Two because (1) there were no life threatening injuries to the victim, (2) the victim was seventeen, which is not "extreme youth"; (3) and the victim's act of jumping out of a moving vehicle to escape, and her alleged

resistance to the sexual assault are counter-indicative of Aggravating Factor Two. (Petr's Mem., ECF No. 1-7 at 14.)

The sentencing court described the crimes as follows:

> Police were called … where a female had been reported stabbed. The police met the victim who indicated she was assaulted by a male … after getting into his BMW in search of a ride to a location. The Defendant was smoking marijuana and attempted to pull down the [victim's] halter top and grab her breast. He was told to stop. He grabbed her by the neck and told her it would be better [if] she did what he said and she wouldn't get hurt. He pushed her head, striking her head on the dashboard, proceeded to rape her from behind. She was trying to get up when he struck her in the left side of her neck with an object. She thought it was a punch, soon realized she had been stabbed numerous times as the Defendant, in fact, indicated at the time of his plea.
> He would not let the victim out of the car, started to drive away wherein the victim actually jumped out of the vehicle. She was 17 years old at the time. The victim had numerous visible injuries.

(Answer, Ex. 4, ECF No. 5-6 at 13-14.)

"On its face, the statute [N.J.S.A. 2C:44-1(a)(2)] does not limit "vulnerability" to age or other physical disabilities of the victim. It expressly includes "any other reason" that renders the victim "substantially incapable of exercising normal physical or mental power of resistance." State v. O'Donnell, 564 A.2d 1202, 1207 (N.J. 1989).

The Appellate Division's denial of Petitioner's ineffective assistance of counsel claim for failing to object to Aggravating

Factor Two was not an unreasonable application of <u>Strickland</u> because the sentencing court properly applied this factor. (Answer, Ex. 20, ECF No. 5-22 at 10.) Habeas Claim Three is denied.

    4.   <u>Habeas Claim Four</u>

In Habeas Claim Four, Petitioner asserts his counsel was ineffective by failing to object to the sentencing court's failure to award gap-time and jail credits. As discussed above, Petitioner is not entitled to an evidentiary hearing to further develop the factual basis for this claim.

Petitioner argues that he was entitled to gap-time credit under N.J.S.A. 2C:44-5(b)(2) because when he "was sentenced on January 7, 2011 for the subject offense, he was serving a sentence for violating the mandates of his Intensive Supervision Program." (Petr's Mem., ECF No. 1-7 at 19.) According to Petitioner, the "subject offense" occurred on August 10, 2009, which was prior to the date his ISP was revoked, and he was sentenced for the revocation on October 28, 2009. (<u>Id.</u>) Thus, he contends he should have been awarded gap-time credits from October 28, 2009 through January 7, 2011. Additionally, Petitioner contends that under New Jersey Rule 3:21-8, he was entitled to jail credit from August 10, 2009 through October 28, 2009, the date I.S.P was revoked.[4]

_____

[4] This contradicts Petitioner's assertion that he was not in prison the day after his arrest, August 10, 2009.

Respondent maintains that because Petitioner was serving a prison sentence in connection with another matter following his arrest in this case, he is only entitled to jail credit for the day of his arrest. (Answer, ECF No. 5 at 17.) He is not entitled to gap-time credit, Respondent contends, because he committed the present crimes after he was sentenced in an earlier case. (Id.)

The Appellate Division found that Petitioner's claim for gap-time credits was unfounded. (Answer, Ex. 20, ECF No. 5-22 at 10.) The court held that for gap-time credit, a defendant must establish that both new offenses occurred prior to the imposition of the first sentence. (Id.) The court explained that Petitioner's new offenses were committed well after he was sentenced on prior convictions, and the fact that he was returned to jail after violating ISP was irrelevant because he merely continued his previously imposed sentence. (Id., citing State v. Hernandez, 208 N.J. 24, 38, 26 A.3d 376 (2011)). The Appellate Division summarily denied the claim for additional jail credit without discussion. (Id. at 11.) The PCR court also addressed the claim for gap-time credit without discussing the claim for jail credit. (Answer, Ex. 6, ECF No. 5-8 at 9-10.)

New Jersey Court Rule 3:21-8(a) states that "the defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." "[J]ail credits … are

earned prior to the imposition of the first custodial sentence …
once the first sentence is imposed, a defendant awaiting imposition
of another sentence accrues no more jail credit[.]" Hernandez, 208
N.J. 50.

N.J.S.A. 2C:44-5(b) (effective Jan. 29, 2001), Multiple
sentences; concurrent and consecutive terms provides, in relevant
part:

> b. Sentences of imprisonment imposed at
> different times. When a defendant who has
> previously been sentenced to imprisonment is
> subsequently sentenced to another term for an
> offense committed prior to the former
> sentence, other than an offense committed
> while in custody:
>
> (1) The multiple sentences imposed shall
> so far as possible conform to subsection
> a. of this section; and
>
> (2) Whether the court determines that the
> terms shall run concurrently or
> consecutively, the defendant shall be
> credited with time served in imprisonment
> on the prior sentence in determining the
> permissible aggregate length of the term
> or terms remaining to be served; and

The New Jersey Supreme Court, in Hernandez, explained:

> To demonstrate an entitlement to gap-time
> credit, a defendant must establish three
> facts: "(1) the defendant has been sentenced
> previously to a term of imprisonment[;] (2)
> the defendant is sentenced subsequently to
> another term[;] and (3) both offenses occurred
> prior to the imposition of the first
> sentence." Id. at 462, 815 A.2d 964 (citing
> Carreker, supra, 172 N.J. at 105, 796 A.2d
> 847). If the defendant meets those
> requirements, the sentencing court is

> obligated to award gap-time credits. <u>Ibid.</u>
> (citing <u>Carreker</u>, <u>supra</u>, 172 <u>N.J.</u> at 105, 796
> <u>A.2d</u> 847).

208 N.J. at 38; 26 A.3d at 384 (N.J. 2011).

Petitioner's PSR, contained in the state court record, indicates that he was sentenced to a 5-year term of imprisonment with an 18-month parole stipulation on May 4, 2007, for distribution and possession of CDS in a school zone. (Answer, Ex. 29, ECF No. 5-31 at 13.) With respect to this sentence, Petitioner entered the ISP program on November 18, 2008. (<u>Id.</u>) The ISP program is "a program of conditional release from custody—a form of intermediate punishment between incarceration and probation—for certain carefully screened non-violent offenders." <u>See</u> <u>State v. Abbati</u>, 493 A.2d 513, 520 (N.J. 1985).

Petitioner was arrested for the present offenses on August 9, 2009. (<u>Id.</u> at 5.) The offenses that are subject of this habeas proceeding were committed on August 8, 2009, which was after the imposition of Petitioner's February 1, 2007 sentence for distribution and possession of CDS in a school zone. (<u>Id.</u>)

The Appellate Division denied Petitioner's claim for additional jail credit and gap-time credit in accordance with state law. Therefore, Petitioner's counsel was not ineffective by failing to object to the sentencing court's award of sentencing credit. Habeas Claim Four is denied.

5. <u>Habeas Claim Five</u>

In his fifth habeas claim for relief, Petitioner asserts he was deprived of his constitutional rights to the effective assistance of trial counsel, due process of the law and of his right to a fair trial because an inadequate factual basis existed for attempted murder and criminal sexual contact. Petitioner contends that his counsel did not lay an adequate factual basis to support a conviction for criminal sexual contact, the elements of which are an act of sexual contact using physical force, and that the victim did not suffer severe personal injury. (Petr's Mem., ECF No. 1-7 at 21.) Petitioner further argues that his counsel failed to lay an adequate foundation for Petitioner's guilty plea to attempted murder because "according to the accusers [sic] Medical Records all injuries were minor." (Petr's Mem., ECF No. 1-7 at 21-22.) The state courts did not address this unexhausted claim.

The elements of criminal sexual contact in the fourth degree include an act of sexual contact with the victim under any of the circumstances set forth in section 2C:14-2c(1)-(4). N.J.S.A. 2C:14-3(b) (effective Aug. 8, 1997). Relevant here, section 2C:14-2(c)(1) (effective August 27, 2004 to March 16, 2012) provides "[t]he actor uses physical force or coercion, but the victim does not sustain severe personal injury."

Petitioner pled guilty to Criminal Sexual Contact as follows:

THE COURT:  And then also on August 8, 2009, in Atlantic City, it's alleged that you committed an act of criminal sexual contact with [the victim] without the permission and with force or coercion in order to degrade or humiliate her or to sexually gratify yourself. Is that true?

MR. WASHINGTON: Yes.

THE COURT:  What did you do, sir?

MR. WASHINGTON:  I slobbed on her bra.

THE COURT:  You placed your mouth.

MR. WASHIGNTON:  I placed my mouth on her bra.

THE COURT:  And her bra is clothing over her breasts.

MR. WASHINGTON:  Yes.

THE COURT:  Did you do so to sexually excite yourself?

MR. WASHINGTON: Yes.

THE COURT:  Is the State satisfied?

MS. LOUGHNEY:  Yes, your Honor.

THE COURT:  She didn't consent to your behavior, is that right?

MR. WASHINTON:  Yes.

THE COURT:  She didn't consent.

MR. WASHINTON:  She didn't consent, yes.

(Answer, Ex. 3, ECF No. 5-5 at 11-12.)

Petitioner's guilty plea satisfied the elements of fourth degree criminal sexual contact; he placed his mouth on her bra

over her breasts without her consent to sexually excite himself. The sexual contact to which Petitioner pled guilty, placing his mouth over the victim's bra, did not cause the victim a severe personal injury. Therefore, Petitioner's counsel did not fail to lay a foundation for Petitioner's guilty plea to criminal sexual contact.

Petitioner also pled guilty to attempted murder as follows:

> THE COURT: … Count 9 alleges, sir, that on August 8, 2009, that you were in Atlantic City, is that true?
>
> MR. WASHINGTON: Yes.
>
> THE COURT: Who was [victim's initials]?
>
> MR. WASHINTON: [victim's name]
>
> THE COURT: And where were you when you attempted to kill her?
>
> MR. WASHINGTON: In Venice Park.
>
> THE COURT: How did you attempt to kill her?
>
> MR. WASHINTON: Stab.
>
> THE COURT: With a knife?
>
> MR. WASHINGTON: Yes.
>
> THE COURT: Did you actually stab her?
>
> MR. WASHINTON: Yes.
>
> THE COURT: What kind of injuries did you cause?
>
> MR. WASHINGTON: Two cuts and one stab wound to the neck, one stab wound to the neck and

> one cut to the forehead and one cut to the
> face.
>
> THE COURT: Do you agree and admit that when
> you took those actions against her, that you
> were trying to take her life and cause her
> death?
>
> MR. WASHINGTON: Yes.
>
> THE COURT: Is the State satisfied on that
> count?
>
> MS. LOUGHNEY: Yes, your Honor. Just for the
> record [the victim] was a person who was not
> known to the defendant prior to, say an hour
> before the crime occurred.
>
> THE COURT: So you found yourself in her
> company somehow, sir. How did that happen?
>
> MR. WASHINTON: I gave her a ride.

(Answer, Ex. 3, ECF No. 5-5 at 10-11.)

As discussed in Section III(D)(1), supra, "a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, … [he/she] does or omits to do anything with the purpose of causing such result without further conduct on his[/her] part." N.J.S.A. § 2C:5-1(a)(2). Petitioner stated that he stabbed the victim for the purpose of causing her death. This is a sufficient basis for attempted murder in New Jersey. Trial Counsel did not fail to object to an insufficient factual foundation for Petitioner's guilty plea. Habeas Claim Five is denied.

6.  Habeas Claim Six

Petitioner's sixth ground for habeas relief is that his trial counsel and appellate counsel failed to object to the trial judge's judicial misconduct that stemmed from his unethical comments from the bench. Petitioner alleges the Honorable Michael A. Donio made unethical remarks at a status conference on June 30, 2010, at sentencing on January 7, 2011, and during the PCR hearing on February 8, 2013, all in violation of the Judicial Code of Conduct. (Petr's Mem., ECF No. 1-7 at 23-24.)

Beginning with the June 30, 2010 status conference, Petitioner alleges the trial court told Petitioner that he would put him on the trial list, "and in 60 days would be his destruction." (Id. at 24.) Neither party was able to obtain a transcript of this status conference, and the Court will accept this allegation as true. Petitioner deemed this comment as a threat and it caused him to reluctantly accept a plea at a later date. (Id.)

Petitioner also complains of the following statements by the court at the time of sentencing:

> [The prosecutor]:  As the Court is well aware,
> she did have to jump from a moving vehicle,
> half naked and she arrived on the front porch
> of a person in Venice Park screaming for help
> and bleeding from the attack.
>
> The Court:  Any way that story is incredulous
> any way.

[Answer, Ex. 4, ECF No. 5-6 at 12.]

> [to the victim] The Court: You're a very brave
> and beautiful young woman.

(Id. at 10.)

> [The Court] However, Aggravating Factor Two
> applies, Aggravating Factors Six and Nine
> applies to this act by this career criminal
> without any apparent remorse.
> The words that come to my mind to
> describe the totality quite frankly of this
> event is words like cruel, despicable,
> depraved, heinous and others. There is no
> reason for this to happen to this young girl,
> 17 years old.
> This issue, as you being attacked by her
> with a cork screw, as I understand it, is
> definitely not plausible in my view and it is
> not worthy of any belief or credence by this
> Court. Quite frankly, this is the type of case
> that we see this young 19 year old at this
> time, w[ith] not only physical, but more
> importantly, mental scars for her entire life.

(Id. at 14.)

Finally, Petitioner complains of the following comments

made by the PCR court:

> And now looking at Mr. Washington, now I can
> remember this victim. And I remember this
> victim, and what jogs my memory about her ever
> more was her sincerity. And at page ten of the
> transcript — and now I remember her because I
> said something that I don't say too often — I
> said to her, "you're a very brave and
> beautiful young woman." I remember her []now.
> All right. She was very credible. She was very
> believable. And, quite frankly, the story that
> defendant gave at the time of the sentence,
> compared with her story and the facts of the
> case, were night and day. And, quite frankly,
> his were not plausible.

41

> . . . and she came into court and she told me
> what happened and she was very, very
> believable.

(Answer, Ex. 6, ECF No. 5-8 at 10-11.)

> This is not a case where even one scintilla of
> a moment, even in a weak moment, would I ever
> consider lowering the sentence. In fact, to be
> quite frank with you, as I read this and
> remembered the case, you know, I was kind of
> saying, well, you know, maybe I'll find
> something in here that will justify setting
> aside this conviction and have this young man
> go to trial. Because, quite frankly, he really
> deserves more than 16 years when I go back and
> rehash this. You know, and if he goes to trial,
> extended term, first degree, could be looking
> at 50, 60 years in prison. But that's not my
> function.

(Id. at 12.)

> This falls, quite frankly, under the category,
> in my view, of being very careful what you ask
> for in this world because you just may get it,
> at some point.
>
> And, Mr. Washington, what you're asking
> for here – – I'm not sure you really thought
> it through, because remembering this girl and
> looking at the discovery and listening to all
> the arguments made at the time of sentence,
> this was a – – this was indicted as an
> attempted first degree murder. And to walk out
> with a 16 year NERA sentence was a borderline
> gift/Christmas present is what it was.
>
> And you – – you're right, you're shaking
> your head back there. That young man
> understands that walking out with what you did
> is a borderline Christmas present. Okay.
>
> And – – but like I say, I would be
> derelict in duty if I went beyond the four
> corners of the record to find a reason to grant
> your PCR so that you could go to trial and get
> the sentence that you, probably, richly
> deserve. . . .

Two, I found and still find that [Aggravating
Factor Two] applies. This was a 17 year old
very small young lady and that the seriousness
of the harm inflicted, cutting her neck and
penetrating her from behind, you know, she was
particularly vulnerable due to her extreme
youth and incapable of exercising normal
physical or mental power of resistance. So I
found that to be an aggravating factor and, I
think, it is an aggravating factor in the
case, especially, after she came in and
addressed the Court.

(Answer, Ex. 6, ECF No. 5-8 at 13-14.)

So, you know, Mr. Washington, you could file
an appeal and maybe some Appellate Division
will reverse what I'm doing here today. That
won't upset me. Okay. Bring it back and we'll
try it. You know, that's not a problem.
    But, like I say, my personal feelings on
this cannot enter into what I do, legally,
okay. I can't do that.

(Id. at 14.)

Respondents countered that Petitioner failed to demonstrate
how he was harmed by any of these statements, given that he
resolved the charges in this matter by negotiating a plea agreement
with the State that dramatically reduced the punishment he could
have received at trial, and the terms of the agreement were
mutually agreeable between Petitioner and the State. (Respt's
Brief, ECF No. 5 at 23.) Furthermore, the PCR court stated its
decision was guided by the law and not based on personal feelings.
(Id.) Respondents also note that the Appellate Division affirmed
the PCR's court's denial of this claim without discussion because

43

it lacked sufficient merit to warrant specific consideration. (Id.)

There is a due process right to a fair trial before a fair tribunal. Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 876 (2009). "As the Court has recognized, however, 'most matters relating to judicial disqualification [do] not rise to a constitutional level.'" Id. (quoting FTC v. Cement Institute, 333 U.S. 683, 702 (1948)). "Personal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under the Due Process Clause.'" Caperton, 556 U.S. at 877 (quoting Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986)). Where a petitioner alleges actual bias, the issue is "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" Id. at 883-84 (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)).

"'[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" United States v. Bertoli, 40 F.3d 1384, 1412 (3d Cir. 1994) (quoting Liteky v. U.S., 114 S. Ct. 1147, 1157 (1994)) (discussing statutory judicial disqualification under 28 U.S.C. § 455(a)).

Here, the only pre-trial comment was that trial would lead to Petitioner's destruction. In light of the fact that the trial judge is not a finder of fact, this comment is insufficient to show that there was such a risk of prejudgment that there was no guarantee of due process at trial.

The remarks by the sentencing judge concerning the credibility of the victim and the defendant were not improper; the defendant and the victim spoke at sentencing in support of their positions on the sentence. The sentencing court was required by statute to weigh the aggravating and mitigating factors, including the nature and circumstances of the offense and whether or not the offense was committed in an especially heinous, cruel or depraved manner; and the gravity and seriousness of harm inflicted on the victim. See N.J.S.A. 2C:44-1(a). Therefore, it was proper for the sentencing court to comment on facts of the case and the credibility of the statements made by the defendant and the victim at the sentencing hearing.

Finally, the remarks by the court at the PCR hearing show that although the court found the crimes heinous, that the defendant was not at all credible and probably deserving of a longer sentence than was imposed under the plea agreement, the court reiterated that the law obligated him to put his personal feelings aside and deny relief, although doing so permitted Petitioner to maintain the benefit of a very favorable plea bargain

of sixteen years. The court's comments throughout the proceedings, together with the court's legal analysis at sentencing and on PCR, indicate that Petitioner was not deprived of due process due to bias of the court. Therefore, neither trial nor appellate counsel were ineffective by failing to raise the issue of judicial bias. Habeas Claim Six is denied.

### 7.   Habeas Claim Eight

In Habeas Claim Eight, Petitioner contends he was deprived of his rights to the effective assistance of trial counsel, due process of the law and of his right to a fair trial since no basis existed to assess a certain sexual offender['s] surcharge. Petitioner contends the sentencing court referred to the $100 charge as a "Sexual Assault Surcharge" but it was in fact a fine under N.J.S.A. 2C:43-3.7, which required advance notice. (Petr's Mem., ECF No. 1-7 at 28.) Petitioner contends his counsel was ineffective for failing to object to the lack of notice. (Id.)

N.J.S.A. § 2C:43-3.7 (effective 2002) provides:

> In addition to any other penalty, fine or charge imposed pursuant to law, a person convicted of an act of aggravated sexual assault or sexual assault under N.J.S.2C:14-2, or aggravated criminal sexual contact or criminal sexual contact under N.J.S.2C:14-3, shall be subject to a surcharge in the amount of $100 payable to the Treasurer of the State of New Jersey for use by the Department of Community Affairs to fund programs and grants for the prevention of violence against women.

Petitioner's claim is frivolous. The statute requires a sentencing court to impose a $100 surcharge on a person convicted of criminal sexual contact, and there was no basis for defense counsel to object. Habeas Claim Eight is denied.

        8.   <u>Habeas Claim Ten</u>

In his tenth claim for relief, Petitioner contends "the Higher Courts erred in agreeing with the P.C.R. Courts [sic] denial of the Petitioner's second P.C.R." Petitioner raised the following claims in his second PCR petition: (1) the trial court improperly displayed bias in imposing the sentence upon the Defendant; and (2) the Defendant was denied his right to fair trial because of the State's failure to disclose exculpatory evidence to the grand jury. (Answer, Ex. 23, ECF No. 5-25 at 2.) Petitioner argues that the state courts erred in finding his second PCR petition untimely.

In addressing Petitioner's unexhausted claims, the Court has addressed the substance of the claims brought in Petitioner's second PCR petition. Therefore, Ground Ten is moot.

IV.  CERTIFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this

47

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.   CONCLUSION

In the accompanying Order filed herewith, the petition for habeas relief under 28 U.S.C. § 2254 is denied.

Dated: July 29, 2019

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**